**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MERRILL E. DAVIS and JEANNE P. DAVIS,**

                                          **Plaintiffs,**

                      v.                                              1:10-CV-480
                                                                     (FJS/RFT)

**CUMBERLAND FARMS, INC. and
NORTHEAST PETROLEUM
TECHNOLOGIES, INC.**

                                          **Defendants.**
_____

**CUMBERLAND FARMS, INC.**

                                          **Third-Party Plaintiff,**

                      v.

**NORTHEAST PETROLEUM
TECHNOLOGIES, INC.**

                                          **Third-Party Defendant.**
_____

**APPEARANCES**                                      **OF COUNSEL**

**OFFICE OF ERIC SCHNEIDER**        **ERIC SCHNEIDER, ESQ.**
P.O. Box 3936
Kingston, New York 12402
Attorney for Plaintiffs

**OFFICE OF MITCHELL H. SPINAC**     **MITCHELL H. SPINAC, ESQ.**
325 Wall Street
P.O. Box 3748
Kingston, New York 12402
Attorney for Plaintiffs

| | |
|---|---|
| **NAPIERSKI, VANDENBURGH ,<br>NAPIERSKI & O'CONNOR, LLP**<br>296 Washington Avenue Extension<br>Albany, New York 12203<br>Attorneys for Defendant/Third-Party Plaintiff | **EUGENE D. NAPIERSKI, ESQ.**<br>**MARK J. DOLAN, ESQ.** |
| **WHITEMA OSTERMAN &<br>HANNA LLP**<br>One Commerce Plaza<br>Suite 1900<br>Albany, New York 12260<br>Attorneys for Defendant/Third-Party Defendant | **CHRISTOPHER M. MCDONALD, ESQ.**<br>**JOHN J. HENRY, ESQ.** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Currently before the Court are Defendant/Third-Party Plaintiff Cumberland Farms, Inc.'s ("Cumberland") motion for summary judgment with respect to Plaintiffs' claims against it and Defendant/Third-Party Defendant Northeast Petroleum Technologies, Inc.'s ("NPT") motion for judgment on the pleadings or, alternatively, for summary judgment regarding Cumberland's third-party complaint.

### II. BACKGROUND

On or about December 28, 2006, Cumberland and NPT entered into a contract (the "Contract") whereby NPT agreed to reconstruct a gas station and convenience store on Cumberland's property in Glenmont, New York ("Glenmont worksite"). *See* Dkt. No. 48-2 at ¶ 5; Dkt. No. 48-4; Dkt. No. 49-1 at ¶ 2. Plaintiff Merrill E. Davis ("Davis") worked for NPT as a foreman at the Glenmont worksite. *See* Dkt. No. 48-2 at ¶ 13; Dkt. No. 49-1 at ¶ 5.

As part of the reconstruction project, NPT excavated a trench in order to lay a drainage pipe from a concrete catch basin at the end of the new diesel fuel island to a creek at the rear of Cumberland's property. *See* Dkt. No. 49-1 at ¶¶ 21, 26. This trench was approximately seven feet deep at the catch basin and tapered to three feet deep at the creek. *See id.* at ¶ 28; Dkt. No. 49-11 at 53:2-19. The diameter of the drainage pipe was approximately thirty inches. *See* Dkt. No. 49-1 at ¶ 25.

On July 30, 2007, Davis was working in the trench to install the drainage pipe. *See* Dkt. No. 48-2 at ¶ 15; Dkt. No. 49-1 at ¶ 30. Specifically, Davis "stood on the floor of the trench as [drainage] pipe sections were lowered and [he] would then tighten collars [that] joined the ends of the pipes." *See* Dkt. No. 49-1 at ¶ 30. To exit the trench at the end of the workday, Davis had to walk the length of the trench, on top of the drainage pipe, towards the catch basin until he reached a slope in the trench. *See* Dkt. No. 49-11 at 63:21-64:12. At that point, he had to "jump" approximately three to three and one-half feet to reach the bank of the trench. *See id.* at 64:13-22. As Davis prepared to "jump'" his left foot slipped off the drainage pipe, causing him to fall on his left shoulder. *See* Dkt. No. 48-2 at ¶ 15; Dkt. No. 49-11 at 69:6-11. When Davis slipped, clay was covering his work boots due to rainy weather; and he was carrying tools in his right hand and a bucket of grease in his left hand. *See* Dkt. No. 48-2 at ¶ 15; Dkt. No. 49-1 at ¶¶ 29, 31; Dkt. No. 49-11 at 67:15-22; 69:2. Davis suffered a torn rotator cuff and compression fracture in his left shoulder because of his fall. *See* Dkt. No. 48-2 at ¶ 16. Davis' injuries required arthroscopic surgery and resulted in a partial permanent disability of his left arm and shoulder. *See id.* at ¶ 17.

On February 23, 2010, Plaintiffs sued Cumberland in New York State Supreme Court Columbia County to recover damages for Davis' injuries. *See* Dkt. No. 49-2 at ¶¶ 3, 5. Plaintiffs claimed that Cumberland violated New York Labor Law §§ 200 and 241(6) by, among other

3

things, negligently failing to (a) keep and maintain a safe workplace; (b) provide Davis with ladders or some other means of safely exiting the trench; (c) taper off the banks of the trench properly; and (d) take all necessary and reasonable steps to prevent Davis' foreseeable injuries. *See id.* at ¶ 6; Dkt. No. 49-3 at ¶¶ 27, 32. In their interrogatory responses, Plaintiffs also claimed that Cumberland violated health and safety standards promulgated by the federal Occupational Safety and Health Administration ("OSHA"). *See* Dkt. No. 49-7 at ¶ 30. In a derivative action, Plaintiff Jeanne P. Davis also sought damages for her alleged loss of comfort, services, society and consortium from Davis, her husband. *See* Dkt. No. 49-3 at ¶ 34.

On April 27, 2010, Cumberland filed a Notice of Removal with this Court pursuant to 28 U.S.C. § 1332, citing diversity of citizenship as the basis for removal. *See* Dkt. No. 49-4. Cumberland simultaneously served an answer to Plaintiffs' complaint, denying all liability. *See* Dkt. No. 49-5.

On January 31, 2011, Cumberland served a third-party complaint on NPT, asserting two causes of action.[1] *See* Dkt. No. 17. First, Cumberland claimed that NPT was contractually obligated to indemnify Cumberland if Davis recovered damages for his injuries. *See id.* at ¶¶ 15-17. Second, Cumberland alleged that NPT breached the Contract by failing to procure insurance that would have required NPT's insurance carrier to defend and indemnify Cumberland for losses suffered because of personal injury actions brought by NPT's employees. *See id.* at ¶¶ 18-21. NPT timely answered the third-party complaint, denying both claims. *See* Dkt. No. 22.

---

[1] Cumberland also asserted common-law indemnification and contribution as a third cause of action. *See* Dkt. No. 49-3 at ¶¶ 1-29. Cumberland, however, subsequently withdrew those claims, conceding that Davis did not sustain the requisite "grave injury" as defined by New York Workers' Compensation Law § 11. *See* Dkt. No. 52-1 at 1; *see also* N.Y. Workers' Comp. Law § 11 (McKinney 2012) (prohibiting a third party from suing an employer for workplace injuries sustained by the employer's employees, unless the employee suffered a statutorily defined grave injury).

# III. DISCUSSION

**A.     Standard of review**

   *1. Motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure*

A district court should grant summary judgment "if the pleadings, affidavits, and disclosures that form the record establish that 'there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Consol. Risk Servs. v. Auto. Dealers WC Self Ins. Trust*, No. 1:06-CV-871, 2010 U.S. Dist. LEXIS 68401, *9-*10 (N.D.N.Y. July 9, 2010) (quoting Fed. R. Civ. P. 56(c)(2)).  Summary judgment, however, is not warranted "'if the evidence is such that a reasonable jury could return a verdict'" for the non-moving party. *Id.* (quoting *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 178 (2d Cir. 2008) (citation omitted)).  "In deciding a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor.'" *Id.* (citation omitted).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, then the non-moving party must identify "'specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation and footnote omitted).  The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted); *see also Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)

(stating that "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact" (citation omitted)).

### 2. *Motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure*

A party may move for judgment on the pleadings after the pleadings are closed. *See* Fed. R. Civ. P. 12(c).[2] Importantly, if a motion for judgment on the pleadings presents matters outside the pleadings that the court does not exclude, the court should regard the motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(d). A court may, however, consider matters outside the pleadings without triggering the summary judgment standard where those matters are "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are 'integral' to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." *Myers v. Camden Cent. Sch. Dist.*, No. 5:10-CV-1167, 2012 U.S. Dist. LEXIS 99127, *11-*12 (N.D.N.Y. July 17, 2012) (footnote omitted).

In this case, the Court will consider NPT's motion as one for summary judgment because both NPT and Cumberland have submitted evidence outside the pleadings to support their respective positions. *See* Dkt. No. 48-1; Dkt. No. 52-1. Such evidence includes Statements of Material Facts, Attorney Affidavits, and depositions, none of which were attached as an exhibit to, incorporated by reference to, or integral to the third-party complaint. *See e.g.*, Dkt. No. 48-2;

---

[2] "'The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim.'" *Myers v. Camden Cent. Sch. Dist.*, No. 5:10-CV-1167, 2012 U.S. Dist. LEXIS 99127,*10-*11 (N.D.N.Y. July 17, 2012) (quotation omitted)). For brevity's sake, the Court will not recite the legal standard governing dismissals for failure to state a claim under Rule 12(b)(6). *See id.* at *11.

Dkt. No. 49-1; Dkt. No. 49-2; Dkt. No. 49-11; *see also Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (stating that summary judgment, rather than a Rule 12(b) motion to dismiss, "is the proper procedural device to consider matters outside the pleadings, such as facts unearthed in discovery, depositions, affidavits, statements, and any other relevant form of evidence").

## B. Cumberland's motion for summary judgment

### 1. *Local Rule 7.1(a)(3)*

As a preliminary matter, Local Rule 7.1(a)(3) of the Local Rules of Practice of the Northern District of New York requires a party moving for summary judgment to submit a statement of material facts with specific citations to the record where those facts are established. *See* N.D.N.Y. L.R. 7.1(a)(3) (2012); *cf. Youngblood v. Glasser*, No. 9:10-CV-1430, 2012 U.S. Dist. LEXIS 131780, *11 (N.D.N.Y. Aug. 22, 2012) (noting Local Rule 7.1(a)(3)'s underlying purpose "is to assist the court in framing the issues and determining whether there exist any triable issues of fact that would preclude the entry of summary judgment" (citation and footnote omitted)). The non-moving party's subsequent response must mirror the moving party's statement of material facts by (1) admitting and/or denying each of the moving party's factual assertions in matching numbered paragraphs, and (2) supporting any denials with specific citations to the record where the factual issue arises. *See* N.D.N.Y. L.R. 7.1(a)(3). Importantly, "[t]he Court shall deem admitted any properly supported facts set forth in the [moving party's] Statement of Material Facts that the [non-moving] party does not specifically controvert." *Id.*

In this case, Cumberland satisfied Local Rule 7.1(a)(3) by providing a six-page Statement of Material Facts replete with citations to the record in each of its thirty-eight paragraphs. *See* Dkt. No. 49-1. Plaintiffs, however, responded with a five page Statement of Material Facts with

7

sixteen paragraphs that neither admitted nor denied Cumberland's factual assertions in mirroring numbered paragraphs. *See* Dkt. No. 54-3. Since Plaintiffs did not specifically controvert Cumberland's Statement of Material Facts in accordance with Local Rule 7.1(a)(3), the Court will accept the factual assertions Cumberland set forth in its Statement as true to the extent that the evidence in the record supports these facts. *See Aktas v. JMC Dev. Co.*, No. 1:09-CV-01436, 2012 U.S. Dist. LEXIS 89735, *4-*5 n.3 (N.D.N.Y. June 28, 2012) (accepting the third-party defendants' statement of material facts as true because the defendant/third-party plaintiff failed to respond to it in accordance with Local Rule 7.1(a)(3) (citations omitted)). Notably, this Court's "Local Rules requirements are not empty formalities." *Bombard v. GMC*, 238 F. Supp. 2d 464, 467 (N.D.N.Y. 2002) (stating that "[t]he courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions" (citations omitted)).

### *2. Plaintiffs' Labor Law § 200 claim*

Labor Law § 200 codifies "the common-law duty imposed upon an owner or general contractor to provide construction site workers with a safe place to work."[3] *Comes v. N.Y. State Elec. & Gas Corp.*, 82 N.Y.2d 876, 877 (1993); *see also* N.Y. Lab. Law § 200 (McKinney 2012). Labor Law § 200 claims fall into two broad categories: "(1) those involving the manner in which work was performed, and (2) those involving a dangerous or defective condition at a work site." *Dwyer v. Goldman Sachs Headquarters LLC*, 819 F. Supp. 2d 320, 329 (S.D.N.Y.

---

[3] Courts analyze Labor Law § 200 and common-law negligence claims simultaneously and any "holding with respect to the section 200 claim applies with equal force to the common-law claims." *Dwyer v. Goldman Sachs Headquarters LLC*, 819 F. Supp. 2d 320, 329 n.4 (S.D.N.Y. 2011) (citation omitted).

8

2011) (citing *Martinez v. City of N.Y.*, 73 A.D.3d 993, 997, 901 N.Y.S.2d 339 (2d Dep't 2010)). The former is at issue in this case.

It is well settled that, "[t]o be held liable for injuries arising from the manner in which work was performed, a defendant 'must have actually exercised supervision and control over the work performed at the site.'" *Id.* (quotation omitted); *see also O'Sullivan v. IDI Constr. Co., Inc.*, 7 N.Y.3d 805, 806 (2006) (barring plaintiff's recovery under Labor Law § 200 because no triable issue of fact existed that defendant's on-site safety manager controlled the injury-producing activity (quotation omitted)); *Griffin v. Clinton Green S., LLC*, 98 A.D.3d 41, 48 (1st Dep't 2012) (stating that "[s]upervision and control are preconditions to liability under Labor Law § 200"). Importantly, "[g]eneral supervisory authority for the purpose of overseeing the progress of the work and inspecting the work product is insufficient to impose liability" under Labor Law § 200. *Ferreira v. City of New York*, 85 A.D.3d 1103, 1106 (2d Dep't 2011) (citations omitted).

In the instant matter, Cumberland argues that it is entitled to summary judgment on Plaintiffs' New York Labor Law § 200 claim because (1) Davis' injuries stemmed from NPT's methods and manner of work, and (2) Cumberland did not supervise and control Davis' work at the Glenmont worksite. *See* Dkt. No. 49-18 at 3, 6. Plaintiffs, however, respond that summary judgment is inappropriate because questions of material fact exist as to the degree of supervision and control Cumberland exercised over Davis' work. *See* Dkt. No. 54-2 at 3. For the following reasons, the Court finds Cumberland's arguments persuasive.

First, it is undisputed that NPT excavated a trench to lay a drainage pipe as part of its reconstruction efforts at the Glenmont worksite. *See* Dkt. No. 48-4; Dkt. No. 49-1 at ¶ 26. It is further uncontroverted that Davis' accident arose from him slipping on the aforesaid drainage pipe while attempting to exit the excavated trench. *See* Dkt. No. 49-1 at ¶¶ 32-34; Dkt. No. 49-

9

11 at 63:21-64:22, 69:6-11. Davis' accident, therefore, arose from the manner in which NPT excavated a trench and the method in which NPT employees exited that trench.

Second, Cumberland met its burden to prove that it neither supervised nor controlled Davis' work on July 30, 2007. Indeed, the deposition testimonies of Davis and David M. Raber, an NPT owner/partner, belie Plaintiffs' attempt to raise a triable issue of fact in opposition because they both conceded that Cumberland lacked supervision and control over NPT's work at the Glenmont worksite. *See* Dkt. No. 49-1 ¶¶ 7, 15, 17, 19; Dkt. No. 49-11 at 36:22-37:16; Dkt. No. 49-16 at 29:25-30:8. Specifically, Davis testified on January 5, 2012, that (1) no individual that Cumberland employed supervised him; and (2) Cumberland did not exercise any control over the work he performed, *see* Dkt. No. 49-1 at ¶¶ 15, 17-18; Dkt. No. 49-11 at 36:22-37:16. Likewise, Raber testified on March 14, 2012, that no agent of Cumberland supervised or directed the work NPT performed at the Glenmont worksite. *See* Dkt. No. 49-16 at 29:25-30:8. On the one occasion in which Davis asked an individual who he presumed worked for Cumberland a question regarding piping for the new gasoline pumps, Davis only received instructions from his NPT supervisors. *See* Dkt. No. 49-10 at 35:10-36:5; Dkt. No. 49-11 at 36:5. Additionally, it is undisputed that no Cumberland representative was present at the Glenmont worksite on the day of Davis' accident. *See* Dkt. No. 48-11 at 49:21-22; Dkt. No. 49-1 at ¶ 38; Dkt. No. 49-11 at 37:19-22; Dkt. No. 49-17 at ¶ 4; *see also Lopez v. Echebia*, 693 F. Supp. 2d 381, 386 (S.D.N.Y. 2010) (finding no viable Labor Law § 200 claim because, in relevant part, the owner was absent from the property when plaintiff was injured); *Vasquez v. FCE Indus. Ltd.*, No. 07-CV-1121, 2008 U.S. Dist. LEXIS 91767, *19-*20 (E.D.N.Y. Sept. 10, 2008) (finding the fact that the contractor was not present at the worksite on the day of the accident to be, at a minimum, persuasive evidence that the contractor did not directly supervise the plaintiff's work (citation omitted)).

Moreover, even viewing the facts in a light most favorable to Plaintiffs, Cumberland retained, at best, general supervisory authority over the construction at the Glenmont worksite. According to John E. Bugner, Cumberland's project manager for the Glenmont worksite, he visited the Glenmont worksite weekly to monitor the progress and quality of work and to ensure safety compliance. *See* Dkt. No. 49-14 at 13:5-6; Dkt. No. 49-17 at ¶ 3. Bugner's visits, however, do not amount to the level of supervision and control necessary to hold Cumberland liable for Davis' injuries under Labor Law § 200. *See Lamela v. City of New York*, 332 F. App'x 682, 685 (2d Cir. 2009) (finding that the contractor did not control the plaintiff's specific work although it inspected the worksite before and after each workday); *Foley v. Consol. Edison Co. of N.Y., Inc.*, 84 A.D.3d 476, 477 (1st Dep't 2011) (finding no Labor Law § 200 liability despite the defendant's inspectors presence on the worksite). This is particularly true where Bugner asserted, in a sworn affidavit dated April 25, 2012, that no Cumberland representative, including him, supervised or controlled Davis' work, and Plaintiffs' offered no contrary evidence. *See* Dkt. No. 49-17 at ¶ 5.

Furthermore, although Bugner monitored safety at the Glenmont worksite, NPT was ultimately responsible for its employees' safety. *See* Dkt. No. 49-1 at ¶¶ 11-12; Dkt. No. 49-16 at 12:12-19, 17:20-18:9, 26:20-27:2; *see also Griffin*, 98 A.D.3d at 48-49 (finding that the right to "'stop the contractor's work if a safety violation is noted, or to ensure compliance with safety regulations, does not amount to the supervision and control of the work site necessary to impose liability on an owner or general contractor pursuant to Labor Law § 200'" (quotation and other citations omitted)). Indeed, Davis was responsible for maintaining the safety logs on the inspections NPT conducted at the Glenmont worksite. *See* Dkt. No. 49-16 at 18:4-9. In addition, the Contract compelled NPT to use only OSHA certified employees and to provide Cumberland with copies of those employees' requisite certificates before commencing work. *See*

11

Dkt. No. 48-4 at 21. The Contract further required NPT to (1) prepare a Health and Safety Plan tailored for the Glenmont worksite, (2) maintain a copy of the plan at the worksite, and (3) provide Cumberland a copy of the plan before commencing work. *Id.*

Accordingly, because Cumberland lacked the necessary supervision and control over Davis' work to be liable under Labor Law § 200, the Court grants Cumberland's motion for summary judgment with respect to Plaintiffs' Labor Law § 200 claim.

### 3. *Plaintiffs' Labor Law § 241(6) claim*

"Labor Law § 241(6) imposes a duty of reasonable care upon owners, contractors and their agents, requiring them to provide reasonable and adequate protection to those employed in all areas where construction, excavation, or demolition is being conducted." *Griffin*, 98 A.D.3d at 49 (citations omitted). This essentially means that Labor Law § 241(6) holds an "owner of the premises vicariously liable for all injuries to construction workers" where the general contractor or subcontractor fails to comply with workplace safety regulations promulgated by the Commissioner of the Department of Labor in New York's Industrial Code. *Ambrosi v. 1085 Park Ave. LLC*, No. 06-CV-8163, 2008 U.S. Dist. LEXIS 73930, *19 (S.D.N.Y. Sept. 25, 2008) (citation omitted); *Dwyer*, 819 F. Supp. 2d at 327 (stating that, "even if the general contractor and owner are not at fault, they may be held vicariously liable under [§] 241(6) if one of their subcontractors failed to comply with a regulation" (citation omitted)); *Vasquez*, 2008 U.S. Dist. LEXIS 91767, at *30 (stating that "a plaintiff 'need not show that defendants exercised supervision or control over [the] worksite'" to recover under Labor Law § 241(6) (quotation omitted)).

Notably, "[f]ederal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the

argument in any way." *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) (citation omitted).

Here, in contesting summary judgment, Plaintiffs did not address Cumberland's argument that the Court should dismiss the Labor Law § 241(6) claim. *See* Dkt. No. 54-2. Plaintiffs, at best, offered two general references that Cumberland violated Labor Law § 241(6) in their Attorney's Affidavit, *see* Dkt. No. 54 at 3, and Statement of Material Facts, *see* Dkt. No. 54-3 at 2. Their response in opposition to Cumberland's summary judgment motion is otherwise silent with respect to this issue. *See* Dkt. No. 54-2. In light of Plaintiffs' failure to respond to Cumberland's arguments, the Court finds that Plaintiffs have abandoned their Labor Law § 241(6) claim. *See Riley v. Town of Bethlehem*, 44 F. Supp. 2d 451, 466 (N.D.N.Y. 1999) (holding that the plaintiff abandoned her claims because she did not address any of them in her opposition papers (citations omitted)); *Giles v. AT&T, Inc.*, No. 6:09-cv-293, 2012 U.S. Dist. LEXIS 14491, *42 (N.D.N.Y. Feb. 7, 2012) (finding that the plaintiffs abandoned their breach of fiduciary duty claim because they did not respond to the defendants' arguments that that claim should be dismissed (citations omitted)); *Marache v. Akzo Nobel Coatings, Inc.*, No. 08 Civ. 11049, 2010 U.S. Dist. LEXIS 92665, *5 (N.D.N.Y. Sept. 7, 2010) (finding that the plaintiff abandoned his design defect claim because he failed to mention this claim in his brief opposing the defendant's motion for summary judgment).

Even assuming that Plaintiffs did not abandon their Labor Law § 241(6) claim, summary judgment is still appropriate because Plaintiffs neglected to plead an Industrial Code regulation(s) that Cumberland allegedly violated. *See* Dkt. No. 49-3; Dkt. No. 49-7; *see also Shannon v. Lake Grove Ctrs., Inc.,* 118 F. Supp. 2d 343, 349 (E.D.N.Y. 2000) (holding that "a plaintiff must allege the violation of a specific rule or regulation promulgated by the Commissioner of the Department of Labor" to state a claim under § 241(6) (citation omitted));

*Simon v. Schenectady N. Congregation of Jehovah's Witnesses*, 132 A.D.2d 313, 317 (3d Dep't 1987) (finding that the "[p]laintiff's failure to specify the violation of any regulation [to be] fatal to his claim under Labor Law § 241(6)"). Not only did Plaintiffs fail to allude to an Industrial Code regulation(s) that Cumberland allegedly violated in their complaint, but they also neglected to identify any such regulation(s) in their interrogatory responses. *See* Dkt. No. 49-3 at ¶¶ 31-32. Plaintiffs compounded this failure by not supplementing their interrogatory responses with the specific Industrial Code regulation(s) allegedly violated, even though Cumberland explicitly objected to the sufficiency of their responses in a letter dated October 5, 2011. *See* Dkt. No. 49-7; Dkt. No. 49-9.

Additionally, "violations of OSHA standards do not provide a basis for liability under Labor Law § 241(6)." *Vernieri v. Empire Realty Co.*, 219 A.D.2d 593, 598 (2d Dep't 1995) (citations omitted)). Consequently, Plaintiffs' reliance on OSHA regulations as a basis for their Labor Law §241(6) claim fails. *See Rizzuto v. L.A. Wenger Contracting Co. Inc.*, 91 N.Y.2d 343, 351 (1998) (holding "that plaintiff's attempt here to use Federal OSHA regulations as a predicate for his Labor Law §241(6) claim against a nonsupervising owner or general contractor must fail"); *Greenwood v. Shearson, Lehman & Hutton*, 238 A.D.2d 311, 313 (2d Dep't 1997) (barring the plaintiffs' recovery for alleged violations of OSHA regulations under Labor Law § 241(6) (citations omitted)).

Accordingly, the Court grants Cumberland's motion for summary judgment with respect to Plaintiffs' Labor Law § 241(6) claim.

#### *4. Plaintiff Jeanne P. Davis' derivative action for loss of consortium*

Under New York law, "a claim for loss of consortium 'is a derivative action and, as such, its viability is dependent on the viability of a primary cause of action . . . .'" *Jones v. United States*, 408 F. Supp. 2d 107, 126 (E.D.N.Y. 2006) (quotation and other citations omitted).

As previously stated, Plaintiffs in this case advance a derivate claim that Davis' wife, Jeanne P. Davis, "sustained a loss of the comfort, services, society and consortium of her said spouse" because of Davis' accident. *See* Dkt. No. 1-1 at 8. Although the merits of this derivative claim are not directly in issue, this claim rises and falls with the viability of Plaintiffs' primary claims under Labor Law §§ 200 and 241(6). *See Jones*, 408 F. Supp. 2d at 126-27 (citations omitted). Accordingly, because the Court grants Cumberland's motion for summary judgment with respect to Plaintiffs' Labor Law §§ 200 and 241(6) claims, the Court dismisses Plaintiff Jeanne Davis' derivative claim as it applies to Cumberland. *See Brusso v. Imbeault,* 699 F. Supp. 2d 567, 586 (W.D.N.Y. 2010) (holding that "[d]ismissal of [a husband's] claim for loss of consortium follows from the dismissal of his wife's claims. . . ." (citation omitted)); *Corral v. Outer Marker Global Steel, Inc.*, No. 10-CV-1162, 2011 U.S. Dist. LEXIS 107390, *23 (E.D.N.Y. Sept. 20, 2011) (dismissing a derivative cause of action for loss of consortium because the defendants' motions for summary judgment regarding the primary cause of action were granted).

### C. **Cumberland's third-party complaint against NPT**

Since the Court has granted Cumberland's summary judgment motion regarding Plaintiffs' Labor Law §§ 200 and 241(6) claims, it further dismisses Cumberland's third-party complaint as moot. *See Wilson v. City of New York*, 89 F.3d 32, 39 (2d Cir. 1996) (dismissing the defendant's cross-appeal for indemnification from the third-party defendant as moot because

the court affirmed the district court's dismissal of the plaintiff's complaint); *Welch v. Dura-Wound, Inc.*, 894 F. Supp. 76, 79 (N.D.N.Y. 1995) (dismissing the third-party complaint as moot because the court granted the defendant/third party plaintiff's summary judgment motion as to all causes of action against it); *Simmons v. Kaufman 8th Ave. Assocs.*, No. 09 Civ. 8502, 2010 U.S. Dist. LEXIS 128515, *7-*8 (S.D.N.Y. Nov. 30, 2010) (stating that, "[s]ince [the defendant's] action against the third-party defendants is premised on [the defendant] being held liable for plaintiff's injuries, the entire third-party complaint is moot").

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Cumberland's motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that Plaintiff Jeanne Davis' derivative claim is **DISMISSED** insofar as she asserts that claim against Cumberland; and the Court further

**ORDERS** that NPT's motion for judgment on the pleadings is **DENIED** as moot; and the Court further

**ORDERS** that Cumberland's third-party complaint against NPT is **DISMISSED**.[4]

**IT IS SO ORDERED**.

Dated: January 29, 2013
      Syracuse, New York

                                              Frederick J. Scullin, Jr.
                                              Senior United States District Court Judge

---

[4] As a result of this Memorandum-Decision and Order, the only claims remaining in this action are Plaintiffs' claims against NPT.